## IN THE UNITED STATES DISTRICT COURT
## FOR THE DISTRICT OF MARYLAND

WILLIAM BURKINS,

    Plaintiff,

    v.

    Civil Action No.:  SAG-20-3597

JOSHUA PIETROGIACOMO, et al.,

    Defendants.

### MEMORANDUM OPINION

Self-represented Plaintiff William Burkins filed this civil rights action against Joshua Pietrogiacomo and the Aberdeen Police Department on December 11, 2020.  ECF No. 1. Defendants filed an Answer on April 5, 2021.  ECF No. 19.  Following the close of discovery, Defendants filed a Motion for Summary Judgment on September 10, 2021.  ECF No. 36.  Burkins's time in which to respond to the Motion was extended to December 10, 2021.  ECF No. 40.  To date, Burkins has not filed a response.  A hearing is not necessary.  *See* Local Rule 105.6 (D. Md. 2021).  For the reasons explained below, the Court will grant Defendants' Motion.

### Background

#### I.    Plaintiff's Allegations

Burkins alleges that on June 3, 2018, during a traffic stop, Officer Pietrogiacomo of the Aberdeen Police Department arrested him pursuant to a warrant issued by Harford County.  ECF No. 1 at 2.  Burkins claims that when he exited his vehicle he informed Officer Pietrogiacomo that he was traveling to the hospital because he had injured his back.  *Id.*  According to Burkins's Complaint, Officer Pietrogiacomo disregarded this statement, handcuffed Burkins's hands behind his back, and pushed him into the back of the police car.  *Id.* at 3.  Burkins screamed because he "felt something pop in [his] chest…" and started crying.  *Id.*  He was driven to the Aberdeen Police

station and interrogated for twenty minutes before paramedics arrived and immediately transported him to a hospital. *Id.* Burkins suffered a collapsed lung and two broken ribs, which he alleges was the result of being pushed into the police car. *Id.* As a result, he was admitted to the hospital for two weeks. *Id.*

## II.    Defendants' Response

On June 1, 2018, the District Court of Maryland for Harford County issued an arrest warrant for Burkins on charges of robbery, second-degree assault, and theft. Warrant, ECF No. 36-2. On June 3, 2018, Aberdeen Police Detective Milton Alexander, while off-duty, observed Burkins and Jessica Collins entering a Walmart in Aberdeen, Maryland, and reported the sighting to the Aberdeen Police Department Dispatch. Alexander Incident Report, ECF No. 36-4 at 6.[1] Burkins and Collins were observed leaving Walmart in a car prior to the police arriving; Detective Alexander followed Burkins and Collins, relaying their movement to Dispatch. *Id.* Officer Pietrogiacomo stopped the vehicle in front of a Sunoco gas station at 607 S. Philadelphia Boulevard. Pietrogiacomo Incident Report, ECF No. 36-5 at 2.

Officer Pietrogiacomo approached Burkins on the passenger side of the car and informed him of the pending warrant for his arrest. *Id.* After Burkins was taken into custody and transported to the Aberdeen Police Department, he stated, "I think my back is broke. I jumped out of a second story window at Travel Lodge because I thought you guys were coming to get me," and requested an ambulance. *Id.* An ambulance was called; volunteer paramedics responded and transported Burkins to Johns Hopkins Bayview. *Id.* Ultimately, Burkins was not taken into custody due to his need for medical care. *Id.*; ECF No. 36-4 at 6.

---

[1] Page citations refer to the page numbers assigned by the Court's electronic docketing system.

In his deposition, Burkins attests that on the night of his arrest he "jumped out of the second story window" at the Travel Lodge, describing that "when you step out of the room the roof was literally right there, like you just step over and the floor was level with the roof, so I [Burkins] walked across the roof and grabbed a hold of the balcony on a spot where you could actually get down from the roof, and when I went to come down from the second floor balcony I slipped and fell on the railing below."  Burkins Deposition, ECF No. 36-6 at 23, 24.  When he fell, the middle of his back hit a wood railing and then he fell to the ground.  *Id.* at 25.

Burkins lay on the ground for five minutes before he was able to stand up because he felt he had broken his back.  *Id.* at 26.  When he was able to stand, he met his girlfriend, Jessica Collins, in the parking lot of the Travel Lodge and told her he needed to go to the hospital.  *Id.*  Collins agreed to take him to Union Memorial Hospital, but they first stopped at the Walmart on Philadelphia Road to buy food.  *Id.* at 29-30.  Burkins avers that he went into the Walmart at Collins' insistence and "hobbled in holding [his] back," which, at that time, felt better than after the initial impact.  *Id.* at 29, 31.

When Collins and Burkins departed the Walmart and turned onto Philadelphia Road, they were stopped by four to six Aberdeen Police cars.  *Id.* at 35.  Collins, who was driving, immediately pulled over. *Id.* at 36-37.  Officer Pietrogiacomo approached the passenger window, Burkins rolled it down and informed the officer that he was on his way to the hospital due to his back injury.  *Id.* at 39.  Regardless, Burkins was directed to exit the vehicle where Officer Pietrogiacomo handcuffed him and told him he could not go to the hospital because he was going to jail.  *Id.* at 46.  Officer Pietrogiacomo walked Burkins to the back of the police cruiser and helped him into the car, but when Burkins sat down on his hands he felt a pop in his chest under his right pectoral muscle.  *Id.* at 46-47, 50.  The traffic stop lasted approximately five to ten minutes.  *Id.* at 52.

Burkins was transported to the Aberdeen Police Department on Park Street, about five minutes from where Burkins and Collins were stopped. *Id.*; ECF No. 36-7. He was in severe pain and asked to be taken to the hospital. ECF No. 36-6 at 53. Burkins avers that he was interrogated at the police station for approximately 10-30 minutes. *Id.* at 51, 56, 57. Burkins admitted to the crime for which he was arrested and states that an officer then reluctantly dispatched an ambulance to the station. *Id.* at 51. No force was used against Burkins while he was at the police station. *Id.* at 63-64. When Burkins explained to two paramedics that he had fallen eight to ten feet, they determined that he needed to go to "shock trauma" and placed him on a stretcher. *Id.* at 52, 61-62, 65. Burkins was transported via ambulance to Bayview Medical Center in Baltimore, Maryland. *Id.* at 65-66. Burkins states that he was told he had a partially collapsed lung and two broken ribs. *Id.* at 67.

## Standard of Review

Pursuant to Federal Rule of Civil Procedure 56(a), "[t]he court shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The Court should "view the evidence in the light most favorable to…the nonmovant, and draw all reasonable inferences in her favor without weighing the evidence or assessing the witnesses' credibility." *Dennis v. Columbia Colleton Med. Ctr., Inc*., 290 F.3d 639, 645 (4th Cir. 2002). Importantly, "the mere existence of some alleged factual dispute between the parties will not defeat an otherwise properly supported motion for summary judgment; the requirement is that there be no genuine issue of material fact." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 247-48 (1986) (emphasis in original).

The Court maintains an "affirmative obligation…to prevent factually unsupported claims and defenses from proceeding to trial." *Bouchat v. Baltimore Ravens Football Club, Inc.*, 346

F.3d 514, 526 (4th Cir. 2003) (internal quotation marks omitted) (quoting *Drewitt v. Pratt*, 999 F.2d 774, 778-79 (4th Cir. 1993), and citing *Celotex Corp. v. Catrett*, 477 U.S. 317, 323-24 (1986)).  "A party opposing a properly supported motion for summary judgment 'may not rest upon the mere allegations or denials of his pleadings,' but rather must 'set forth specific facts showing that there is a genuine issue for trial.'"  *Id*. (quoting Fed. R. Civ. P. 56(e)).  A dispute of material fact is only "genuine" if sufficient evidence favoring the nonmoving party exists for the trier of fact to return a verdict for that party.  *Anderson*, 477 U.S. at 249-50.

## Discussion

### I.      Excessive Force

Defendants argue that they are entitled to summary judgment because no physical force was used against Burkins during his arrest and brief detainment, nor did they cause any physical injury to him.  ECF No. 36-1 at 4.

Claims of excessive force during an arrest or investigatory stop are examined under the Fourth Amendment's objective reasonableness standard.  *Graham v. Connor*, 490 U.S. 386, 395-97 (1989); *see also Cty. of Los Angeles v. Mendez*, 581 U.S. __, 137 S.Ct. 1539, 1546-47 (2017) ("*The* framework for analyzing excessive force claims is set out in *Graham*.").  Reasonableness is assessed by weighing "the nature and quality of the intrusion on the individual's Fourth Amendment interests against the importance of the governmental interests alleged to justify the intrusion."  *Mendez*, 137 S.Ct. at 1546 (quoting *Tennessee v. Garner*, 471 U.S. 1, 8 (1985)).  The operative question is "whether the totality of the circumstances justifies a particular sort of search or seizure."  *Id*. (quoting *Garner*, 471 U.S. at 8-9).

Factors to be included in making this determination include the severity of the crime at issue, whether there is an immediate threat to the safety of the officer or others, and whether the subject is resisting arrest or attempting to flee.  *See Graham*, 490 U.S. at 396.  The determination

is to be made "'from the perspective of a reasonable officer on the scene'… 'based upon the information the officers had when the conduct occurred.'" *Mendez*, 137 S.Ct. at 1546 (first quoting *Graham*, 490 U.S. at 397; then quoting *Saucier v. Katz*, 533 U.S. 194, 207 (2001)).  Further, "'the right to make an arrest' 'necessarily carries with it the right to use some degree of physical coercion or threat thereof to effect it.'"  *E.W. ex rel. T.W. v. Dolgos*, 884 F.3d 172, 192 (4th Cir. 2018) (quoting *Graham*, 490 U.S. at 396; *see also Martin v. Gentile*, 849 F.2d 863, 869 (4th Cir. 1988).

By his own admission, Burkins sustained his injuries when he jumped from a second story balcony at the Travel Lodge and hit his back on a railing before falling to the ground.  ECF No. 36-6 at 23, 24.  Moreover, at his deposition, Burkins explains that Officer Pietrogiacomo helped him into the police car following his arrest, but did not use any force against him to do so.  Rather, he "did the typical like push your head, watch your head thing, sit down in the back of the car, like kind of helped me, pushed me back into the car or whatever to sit down."  ECF No. 36-6 at 46; *see also id.* at 49 (Burkins denying that he was forced or shoved into the police car).  It was only after Burkins was seated that he states he felt pain in his chest.  *Id.* at 46-47.  Burkins also avers that he was not shoved, beaten, or punched while being interrogated at the police station before he was transported to the hospital.  *Id.* at 63-64.

As such, viewing the evidence in the light most favorable to Burkins, the Court cannot find that Officer Pietrogiacomo or any officer used any force, must less, excessive force, against Burkins during the course of his arrest and detainment.  Therefore, Defendants are entitled to summary judgment on this claim.

## II.     Medical Care

Defendants argue that they are also entitled to summary judgment as to Burkins's delay of medical care claim because the undisputed facts demonstrate that paramedics were called to the

Aberdeen Police Department without substantial delay, and Burkins was ultimately released from custody due to his need for medical care.  ECF No. 36-1 at 5.

"Pretrial detainees are entitled to at least the same protection under the Fourteenth Amendment as are convicted prisoners under the Eighth Amendment." *Young v. City of Mt. Ranier*, 238 F.3d 567, 575 (4th Cir. 2001) (citing *City of Revere v. Mass. Gen. Hosp.*, 463 U.S. 239, 243-44 (1983); *Hill v. Nicodemus*, 979 F.2d 987, 991-92 (4th Cir. 1992).  Thus, deliberate indifference to the serious medical needs of a pretrial detainee violates the Due Process Clause. *Id.* (citing *County of Sacramento v. Lewis*, 523 U.S. 833, 845-46 (1998) (concluding that, because it is sufficient for liability under the 8th Amendment, "deliberately indifferent conduct must also be enough to satisfy the fault requirement for due process claims based on the medical needs of someone jailed while awaiting trial"); *Grayson v. Peed*, 195 F.3d 692, 695 (4th Cir.1999) (applying deliberate indifference standard to pretrial detainee's claim that he was denied needed medical treatment), cert. denied, 529 U.S. 1067 (2000).  The Fourth Circuit has held that, though the precise scope of a pretrial detainee's Fourteenth Amendment rights is "unclear," a violation can be made out when a pretrial detainee "shows [that a state actor demonstrated] deliberate indifference to serious medical needs" under cases interpreting the Eighth Amendment.  *Mays v. Sprinkle,* 992 F.3d 295, 300 (4th Cir. 2021).

To state an Eighth Amendment claim for denial of medical care, a plaintiff must demonstrate that the actions of the defendants, or their failure to act, amounted to deliberate indifference to a serious medical need.  *See Estelle v. Gamble*, 429 U.S. 97, 106 (1976); *see also Anderson v. Kingsley*, 877 F.3d 539, 543 (4th Cir. 2017).  Deliberate indifference to a serious medical need requires proof that, objectively, the prisoner plaintiff was suffering from a serious medical need and that, subjectively, the correctional staff were aware of the need for medical

attention but failed to either provide it or ensure it was available. *See Farmer v. Brennan*, 511 U.S. 825, 834-7 (1994); *see also Heyer v. U.S. Bureau of Prisons*, 849 F.3d 202, 209-10 (4th Cir. 2017); *King v. Rubenstein*, 825 F.3d 206, 218 (4th Cir. 2016); *Iko v. Shreve*, 535 F.3d 225, 241 (4th Cir. 2008). Objectively, the medical condition at issue must be serious. *See Hudson v. McMillian,* 503 U.S. 1, 9 (1992) (there is no expectation that prisoners will be provided with unqualified access to health care); *Jackson v. Lightsey*, 775 F.3d 170, 178 (4th Cir. 2014). "A 'serious medical need' is 'one that has been diagnosed by a physician as mandating treatment or one that is so obvious that even a lay person would easily recognize the necessity for a doctor's attention.'" *Heyer*, 849 F.3d at 210 (quoting *Iko*, 535 F.3d at 241); *see also Scinto v. Stansberry*, 841 F.3d 219, 228 (4th Cir. 2016) (failure to provide diabetic inmate with insulin where physician acknowledged it was required is evidence of objectively serious medical need). Proof of an objectively serious medical condition, however, does not end the inquiry.

After a serious medical need is established, a successful claim requires proof that the defendants were subjectively reckless in treating or failing to treat the serious medical condition. *See Farmer*, 511 U.S. at 839-40. "Actual knowledge or awareness on the part of the alleged inflicter…becomes essential to proof of deliberate indifference 'because prison officials who lacked knowledge of a risk cannot be said to have inflicted punishment.'" *Brice v. Va. Beach Corr. Ctr.*, 58 F.3d 101, 105 (4th Cir. 1995) (quoting *Farmer*, 511 U.S. at 844). The subjective knowledge requirement can be met through direct evidence of actual knowledge or through circumstantial evidence tending to establish such knowledge, including evidence "that a prison official knew of a substantial risk from the very fact that the risk was obvious." *Scinto*, 841 F.3d at 226 (quoting *Farmer*, 511 U.S. at 842).

The undisputed evidence shows that between the traffic stop at which Burkins was arrested and when the paramedics transported Burkins to the hospital, about 33 to 58 minutes elapsed. *See* ECF No. 36-6 at 52, 56-57; ECF Nos. 36-7, 36-8. During the traffic stop, Burkins informed Officer Pietrogiacomo that he had a back injury and was in route to a hospital for treatment and that he needed an ambulance. *See* ECF No. 36-6 at 41-43; ECF No. 36-5 at 2. However, at no time did Defendants visibly observe Burkins's bruised back or other physical indicators that Burkins needed immediate medical attention. *See* ECF No. 36-6 at 62. Moreover, Burkins did not explain how he incurred his injuries until after he had been transported to the Aberdeen Police station. ECF 36-5 at 2.

Viewing the evidence in the light most favorable to Burkins, while a punctured lung and broken ribs are objectively serious medical needs, the Court cannot find that Burkins was exhibiting symptoms of those needs such that the officers observing him should have discerned that Burkins needed immediate medical care. Therefore, Defendants did not have the subjective awareness necessary to establish that the delay in medical care amounted to deliberate indifference. *See Brown v. Comm'r of Cecil Cty. Jail*, 501 F. Supp. 1124, 1126 (D. Md. 1980) (delay "does not violate the Eighth Amendment where the seriousness of the injury is not apparent"). Moreover, the record does not demonstrate that the short delay in treatment in fact exposed him to further injury. Notably, Burkins left Bayview Medical Center against medical advice shortly after gaining consciousness and realizing he had been released from custody. ECF No. 36-6 at 69, 72, 74. Therefore, based on the record, Burkins cannot sustain a claim for deliberate indifference and Defendants are entitled to summary judgment.

**Conclusion**

Defendants' Motion, construed as a motion for summary judgment, is granted.  Judgment is entered in favor of Defendants.  A separate Order follows.

April 18,2022\_\_\_\_  \_\_\_                    _____/s/_____
Date                                                     Stephanie A. Gallagher
                                                         United States District Judge